Good morning, Your Honor. Desmond Lee representing the appellate and the cross-appellate in this case. And I'm not going to bother going over what a lot of what you see. I think they say quite a bit or speak for themselves. What I would like to begin, though, is to say that this is a case that arises under ERISA's equitable relief provisions. And that when we're talking about equity, I think one of the broad themes here is the fact that the defendants in this case, some of whom, and one in particular, was seriously injured, have all been compensated through a settlement they have reached with third-party tortfeasor in state court. Well, can I just go directly to what seems to me the problem? I think you've got all the equity on your side, but you're suing on a contract. And I can't see how you get around it. Your Honor, we're not suing under the contract. Well, what else are you suing on? We're suing under a constructive trust theory. Well, they didn't get that money that way. It seems to me they didn't hold on to it. It's not your money to begin with. I mean, it's very – I think you're in a very difficult position. But if you can show you're suing in equity, you have something of a claim. Can you do it? Yes, we can, Your Honor. I think that when you take a look at some of the cases that have been decided elsewhere, that they have allowed these type of claims to go forward. They have allowed these type of constructive trust claims and equitable liens to be placed on tort recoveries. How about the Ninth Circuit? The Ninth Circuit has not done so, has not actually got a case until we submit ours that has been one that appropriately sets that forth. And the reason why is that if you take a case like Westaff, they weren't seeking the parties that had control over the money, and they were seeking a remedy of specific performance. And I think that particular remedy was something that Knutson particularly said that was not one that was typically available in equity and something that is not – that doesn't arise out of the equity jurisdiction. But doesn't your basic claim arise with the contract you had with the employee? No. No? No, not at all. How do you get any rights except from the contract? Well, what we're saying is that the money they have is in good conscience ours because we're the equitable owner of that. Yeah, but does it not go back to a claim based on the contract? No, it does not. Well, where do you get the claim unless you have that contract? From the term – from the plan of the term, or the term of the plan, I should say. Yeah, well, then you're going on the contract. Well, it's – Well, you can't play it both ways. You've got a contract. He should pay you. Yes, I agree. But that doesn't convert into an equitable claim. Well, Your Honor, I would say that we have a contract just like we – the other people that have prevailed on this theory have a contract. And how other courts like the Administrative Health and Welfare Committee, the VARCO and the Seventh Circuit and others had a contract. You may be able to say that it's maybe a contract or however you want to characterize it. So long as you're staying within the parameters of the rule set forth in Knutson and more importantly set forth in Hawaii or Honolulu JATC v. Foster, which has now specifically brought the Ninth Circuit in line with all those other cases and that makes those other cases all applicable, you can call it a contract if you want. You still have – Well, it is a contract, isn't it? Pardon me? It is a contract. It's not mine. No, I would say that – no, I would think that if we were suing just for the lien in state court, yeah, I would say that you're breaching the lien contract you have. But we're trying to enforce a term of a plan under 502A3. And that allows us to obtain any other appropriate equitable relief to enforce the terms of a plan. And I think that is what we're seeking. That is what we're seeking in terms of relief that, again, other courts have allowed plans to obtain outside the Ninth Circuit. And the Ninth Circuit rule as of Foster is exactly the same as those in the Seventh Circuit, the Fifth Circuit, the Fourth Circuit, that have all allowed these. And so, again, the nomenclature of – and the names that you may want to attach to the type of claim we have, we are saying that there's nothing different than any of the other claims that have prevailed so far. And the issue really is whether or not you are seeking a trust on specifically identifiable property. Well, let me stop there because I – that's – I have problems with that. The Supreme Court, it seems to me, has made a very perhaps super refined distinction between the equitable and the legal remedies. But when we talk about classic constructive trusts, you've got to find the property or a clear substitute for it that has some sort of a tangible identity. And I have trouble here. You paid out funds and you paid out funds presumably to health care providers. That's correct. That money's gone. It was to the benefit of the defendants and you want some money back from them. But I don't know that that's different from any other debt as opposed to being a particular property that you can actually find to put a trust on. Sure. I think the answer to that is, again – again, is a simple reference to cases like VARCA where that exactly happened. They did pay the monies out to the medical care providers and things like that. And what they did was they – they now are looking for an equity. Equity allows you to go after money that you can trace back to the plan term that imposes or imposes some obligation saying that you owe us the money back. Well, there you – you trap yourself when you say the plan imposes an obligation. To my mind, that just says you've got a contract that imposes an obligation. Well – They chose to disregard it. I think, Your Honor, again, we go back to the whole notion that whether or not you want to call it a contract or not is something – Well, that's very important. It is important in the sense – It's not whether I choose to call it or not. It is a contract. Well, it's – it's – Isn't it? I mean, it's two parties have agreed to something. Isn't that a contract? No, that – that is a contract. However – Isn't this not a – the kind of agreements you're dealing with? No, we're not – we're not dealing – Isn't it an agreement between the company and – We're not necessarily dealing with an agreement, Your Honor. I think what we're dealing with is a situation where we are looking to some funds that we say that we are equitably entitled to. Well, please go back. Don't you have a contract? Isn't the plan a contract? No, it's not. It's not? What is it? It is not – it's something which governs the way the plan is administered. And the thing is, when they have – again, when they – when they take a look at these – Did they make an agreement with you about this or not? They did make an agreement with us. All right. Isn't that a contract? That – that may be – if we're trying to – Maybe. Isn't it a contract? Can they agree with you? The lien itself, yes, is a contract. All right. All right. The term of the plan that we're seeking to enforce, however, is not based on a contractual theory. It's based upon other appropriate – equitable relief. Well, if – if – getting back to the – It's sort of like waiving assumption to suing in tort. That's something like that. Well, I mean, it seems to me – I don't want to debate. I'm sorry. No, but it seems to me, I mean, to get – to maybe tie together both threads of analysis, there doesn't – there doesn't seem to be any separate property. VARCO, there was a separate account. You don't have a separate account here. And, therefore, it seems like a contract suit for damages rather than an equitable suit for constructive trust. May I answer the question? Sure. Sure, yes. As we've identified in our first amendment complaint, for instance, the fact that we – we – we have identified the client trust account of the attorneys. That's a separate account. That – that client trust account under California law can only – can only handle money that comes in from the settlement. We've – we've set forth that specifically and said it's actually stipulated. And is the money – is the money still there? Pardon me? Is the money still there? We don't know. We don't know yet. But I think the important thing to realize is this is not – I mean, I guess to follow your theory, if it's not still there, then the case is over. Well, it may or may not be. That's – our – our position is this is an appeal. Well, we'll find out in a minute whether it's still there. Pardon me? In a minute, we'll ask. We'll find it. I think that – If it's not there, is the case over? Pardon me? It's over as to the particular defendant. But we have a right to trace. Some of the cases that followed Newsom allowed us to trace these assets. And there are even some cases that we've cited those in our 28J letter that have, in fact, gone as far to say that you only have to go to the party that – that did have control over the – the funds. And so basically, I think we're getting ahead of ourselves, in my opinion, because the procedural posture of this case is the fact that it's an appeal from a 12d6 motion. And what we're trying to get straight here is the rule of law. And the rule of law is so long as we can identify people who have possession of these funds, that's not anything to do with the contract. We're just saying that we're looking to the plan term. We're going to enforce the plan term against anybody. But you – essentially, you're saying we have a lien on this, and the lien goes back to a contract. But if they didn't – if the lien is gone, we're going to pursue the people that disposed of the lien for them. Well, I can – I can illustrate this – this whole contract here and why this is really a true contract by the fact that Harris Trust allows plans or anybody who's suing under 50283 to sue anybody who potentially may be covered by that. So what happened was we didn't – we may not have had, for instance, a contract with the trustee of the Miners Comp Trust that we understand has been established. However, we can go after them so long as we can trace funds that are in possession of a defendant that we can equitably claim is ours under Knutson. So the contract theory is a misnomer in the sense of our case because, well, we're dealing with some people that we might have signed a lien with. If, for instance, they put it in another trust, for an XYZ trust, for instance, and we know and we can trace it over there, the money has not dissipated, we don't have a contract with them. 50283 allows us to, and so does Harris Trust, saying that the potential universal defendants under 50283 is unlimited. We can go after these people and keep tracing the money and keep going after the money to see if we can get that money under this constructive trust theory. So the whole notion that this is a contract, I think, is a misnomer. Well, it wasn't a misnomer in your first complaint because you pled breach of contract for the same amount of money against the same defendants. We pled that as an alternative. Go ahead. I'm sorry. No, no. We pled that as an alternative theory in case or to state a state claim for breach of contract. And it's pleading in the alternative. And that's obviously something if we were to go along. Right. But your vehement disavowal of any contractual nexus is somewhat. Under our theory of 50283. I'm sorry. I don't mean to evade the question. You're pursuing it under the plan. Is the plan a collectively bargained into this? Yes, it is. Yes, it is. So I would just like to make that clear under 50283. It's just based on our enforcement of the plan. And if somebody, if their grandmother has it, for instance, who we have no relationship with, and we can trace that money to her, that will allow us to get that money under 50283. And that's very, very clearly stated in Harris Trust. So I think that's, and again, we're pursuing the type of claims that have been widely acknowledged by every other court to have decided this theory or any of these cases to say that if you can just hook somebody that has it, then that's what it is. And. Are some of those post notes in? Yes. Yes, they are. We've noted, for instance, one of the cases we have cited where some of them are reimbursed reimbursement cases in this particular context that have arose out of this particular, the particular facts of this case. Primax recoveries for Young, for instance, is a Fourth Circuit case that holds just that. It was decided late last year, I guess a couple of months ago. And I think that what we can do here is we can take a look at Foster and another post Foster case decided by a district court in the Ninth Circuit called Schulenburg v. Rawlings that was decided by the District of Nevada. And they were saying that most recently the Ninth Circuit in Foster found that equitable restitution is available under ERISA where specific rates or funds can be identified and attached by an equitable lien or a constructive trust. And I think that language there allows us, authorizes us to do so. We have identified certain individuals in the complaint that have possession of it, in particular the lawyers who have had it in the trust account. Well, you only, in the trust account, unless I'm reading your complaint incorrectly, you only identified $30,000 that's in a trust account. Well, we have. Why aren't you limited to that? Let me see here. We have, in our first amended complaint, Your Honor, we have identified. You said, assuming the truth of Weldon's representation and McClellan has the $30,000 generated from the Rodriguez settlement, McClellan has possession of such funds because it is in a client trust account. The bond here is constructive possession. That's correct. Well, at least we have that $30,000. Is there any other account, trust or otherwise, that you have? Let me finish. Is there any other segregated property in the form of a trust account or otherwise that you've identified in your complaint? Not in the complaint, Your Honor. What we do know, though, is a post-complaint development is the fact that a minor's compromise had been approved by the court. Under California law, there has to be, like in Knutson, a special needs trust established. We intend to go down, amend our complaint to name that trust, and take other discovery to see whether or not we can trace the funds that allow us to seek the type of relief that every other court has relied on. And I think the real thing here is that what they're going to argue is that, well, Foster ended up denying relief. Well, let's hear what they have to say and then you can respond to it. I'm sorry? You said what you think they're going to argue. Let's hear what they have to say. They're going to say that Foster denied relief and, therefore, they're not entitled to it. They're going to basically I guess what I'm saying, why don't you reserve your time for rebuttal and let them see what they say, and then you can respond. Thank you. I think that's all I have for right now, other than to say that, again, this is an appeal from a motion to dismiss. You take the facts pled as being true, and that we do have some knowledge here to allow an amendment to the complaint to allow us to name other trusts, just like Knutson did, saying that Scalia left it open to say that, hey, you can name a trustee of the trust as a party. This case might be different. And if you take a look at Ginsberg's dissent, she hits it head on. She says that this is a bunch of hooey because this case would have been that we would have decided this case differently under Scalia's standard if they'd just named the right party, and that would have been the trustee of the Miners Com Trust, and that's what we're looking at here. Thank you, counsel. Thank you. Good morning, Your Honors. Don DeCamera appearing for the appellees and cross-appellants. And if it's appropriate, I'd like to reserve a bit of my time, two or three minutes, to respond on the attorney's fee cross-appeal. I have not been involved in an appeal where the case law, controlling case law of the circuit that we're in, the Ninth Circuit, is so clear and well-established, it's difficult to believe that we're even here. We have six published cases. We have two unpublished cases, one of which went to the Supreme Court, affirming the entire body of law. Counsel for the union fund takes these various Supreme Court decisions and basically nitpicks, takes little phrases out of them, completely out of context, and builds his entire argument about it. Harris Trust is a perfect example. He takes one quote from Dobbs on trust, in Harris' quote, that constructive trust is based on property, not wrongs, and tries to build his entire case about that. But if you look at the same page in Harris Trust, where the Supreme Court is discussing constructive trust, the entire page is replete with references to the wrongdoing or breach of trust or violation of fiduciary duty that is necessary to establish a constructive trust. For example, and these are quotes, I'll take them out of context, as he did, that this is what the court is talking about. A trustee in breach of his fiduciary duty, as we long ago explained in the analogous situation of property obtained by fraud, whenever legal title to property is obtained through means or under circumstances which render it unconscientious for the holder of the legal title to retain it, hands of the original wrongdoer, they can be cut off by a purchaser in good faith. Again, speaking of the original wrongdoer, the common law of trust sets limits on restitution actions against defendants other than the principal wrongdoer. Only a transferee of ill-gotten trust assets may be held liable under a constructive trust. Circumstances that rendered the transfer in breach of trust. Transferee must be demonstrated to have had actual or constructive knowledge of the circumstances that rendered the transaction unlawful. And this is completely consistent with the common law of constructive trust. If you look at a typical statute, and I don't mean to bring a particular state's law into the equation, but the California law of constructive trust is at Civil Code 2224. And it requires, breach of fiduciary, no, excuse me. It requires, quote, fraud, mistake, accident, undue influence, violation of trust, or other wrongful act. This court determined long ago that the submission of medical claims to a group insurance plan and the receipt of those, or the payment of those claims, and then standing on one's rights under ERISA is not wrongful conduct in FMC v. Owens. That same finding was made in this case, first by Judge Baird in the TRO, where she said nothing of that sort is involved in this case, despite what I consider to be a sham pleading where they allege fraud, undue influence, and so on and so forth. Judge Hupp, at the first 12B6 motion, also found that you, Mr. Union Fund, have made no showing whatsoever of any fraud, ill-gotten gains, etc. And he gave them one more chance to amend their complaint and said, if you're proceeding under the Ninth Circuit case, you've got cases and authority, you've got to show these ill-gotten gains to get restitution. If you're proceeding under the constructive trust dicta in Great West v. Knudsen, then you have to show actual ownership of the funds, not a security interest, not a lien, which is a security interest. You have to show you own the same funds.  taking things out of context, if we look at the actual language in Great West v. Knudsen, the court draws a critical distinction between the two types of restitution. First, legal, which is not allowed because it's the equivalent of a breach of contract, and the second, equitable. The first is, and I quote, in cases in which the plaintiff could not assert title, right or title, to the possession of particular property, but in which, nevertheless, he might be able to show just grounds for recovering money to pay for some benefit the defendant had received from him, the plaintiff had a right to restitution at law through a writ of assumption. Such claims were viewed, essentially, as actions at law for breach of contract. That is precisely the situation here. It is legal restitution they are seeking, which is absolutely prohibited under the holding in Great West v. Knudsen. The von der Haars did not get one penny of the union fund's money. Those were paid to medical providers. This is the distinction that the foster court actually drew. This is the actual holding in foster, is you can't sue and recover from Mr. Foster, who received no money or property from the union. Instead, he received training. You conferred a benefit upon him. Because you conferred a benefit upon him and now want to sue him for damages for the value of that benefit, that is legal restitution. It is the equivalent of an action at law, and it is prohibited by ERISA. Most importantly, there's a lot of discussion, a lot of undertone in the case. Judge King actually found that there was a windfall. There can't be a windfall because of the express holding in Westaf, which held for the first time by any court anywhere, that Congress intended to prohibit reimbursement actions of this type when it passed ERISA. Therefore, there can be no windfall as a matter of law. That was an error of law by Judge King when he made that statement. It is in direct contravention of the express holding in Westaf. If you accept the Westaf holding that Congress intended to prohibit these types of reimbursement actions, then their entire argument goes nowhere on the main appeal. More importantly, on the attorney's fee argument, Judge King incorporated those same two concepts that ERISA does not prohibit reimbursement actions. ERISA does not allow a defendant to be free of reimbursement. Again, in direct contravention of the express holding in Westaf. As a result of making those two errors of law, he determined that there was this windfall. There is no windfall because there is no right. The contract is invalid because Congress intended to bar that type of provision or action in the contract when it passed ERISA, according to the Westaf case, authored by the Chief Judge of the Ninth Circuit. That led Judge King to, it completely colored his thinking on the attorney's fee motion. He skipped the special circumstances doctrine, which he is supposed to apply out of the box, where you have a prevailing ERISA participant. The first thing you do is you apply the special circumstances from the Smith v. CMTA case, which holds that a prevailing ERISA participant should always be awarded fees in an action against his ERISA plan, or in an action with his ERISA plan, unless special circumstances exist to render such an award unjust. It's certainly what it says. We seem to have grafted the home mail requirements on top of that in some of our cases, haven't we? Yes. Maybe it's in determining what are exceptional. There is, it appears from reading all of the cases that the way, the procedure that should be applied is that the court should first apply the special circumstances doctrine from Smith. Then the court need not even consider the Hummel v. Rykoff factors if there's a prevailing ERISA participant and can just rely on special circumstances and say there are no special circumstances, fees must be awarded, as in the Nelson case. Many cases, in fact most cases, apply the special circumstances doctrine, then they consider the five Hummel v. Rykoff factors in light of the remedial nature of the special circumstances doctrine. In other words, that this was designed to protect the ERISA participant and to make sure he had adequate access to federal courts through an award of attorney's fees, that he could not be bullied by a frivolous action against him in federal court because of the threat of attorney's fees, and that he would be compensated for such. When you apply those factors with this remedial purpose in mind, you reach a far different result. In addition, in considering the five Hummel v. Rykoff factors without the remedial nature of Smith in mind, Judge King determined that the Vonderhaars were not free of this reimbursement action under ERISA. Again, and this was the fourth Hummel factor, making a finding which was an error of law because it contradicts Westaf, the direct holding of Westaf, and therefore finding that there was a windfall. He took the second factor, ability to pay fees, and compared the $80 million net worth of this union fund with the worth of a working carpenter, Mr. Vonderhaar and his family, and determined that that slightly favored an award of fees. That shows that he was biased in his approach to the attorney's fee issue from the outset, probably because he misapplied the special circumstances doctrine. When he goes through all five of these, had he applied them correctly, all five would have favored an award of fees. Certainly, factor number four, where he made the misapplication, misfinding of law, would have changed had he not found a windfall and this freedom from reimbursement enforcement that he believed existed, and he would have awarded fees. Instead, he applies the Hummel versus Ryckhoff factors without the remedial nature of the Smith doctrine in mind, and then gets to the end of the case and applies it backwards then, and he says, because of the above discussion of the Hummel versus Ryckhoff factors, special circumstances exist to deny the award of fees. He doesn't say what they are. We're supposed to look for them in his discussion of the Hummel versus Ryckhoff factors, which contain these two errors of law, and which clearly do not reflect the remedial nature of the special circumstances doctrine required to benefit the employee, the participant, and the beneficiary, and that's where he went wrong, in our humble opinion, on the attorney's fee issue. The court is quite correct that the ERISA plan is a contractual document. That's why we have participants. That's why we have third-party beneficiaries. The Vonderhaar family are beneficiaries of this contract, and all of their claims, all of the union plan's claims, relate to and arise from this contract. That's precisely why all of their state claims are preempted. I don't think we need to go deeply into the preemption. I guess there's a separate contract in a way, isn't there? Don't they, when they get the benefits, they sign a thing saying they will reimburse you? That's interesting, Your Honor. They don't do it exactly that way. If you look at the complaint, you will see that they refuse to pay the bills until the additional documentation drafted whichever way the union wants to is signed. And they even put that in their complaint that the Vonderhaars were required, and their attorney, were required to sign these lien documents and reimbursement agreements before they would pay their medical bills. No additional consideration, nothing more than coercion. Just in terms of tracing the money, at one point you said the money went to the medical providers. Where is the money now that was paid by the medical providers? The medical providers probably spent it or paid taxes with it. Didn't the union pay them too, or what? No, only the union paid them. The union paid them. I don't know, but these, what your client received in insurance, where is that money? Your Honor, I believe that's outside the record, but I'll speak to my understanding of that. Well, is there money in your, is there $30,000 in the client account? No, Your Honor. Under California law, it doesn't work that way. Minors' compromises do not go into attorney's trust accounts. So there's nothing in the client... They go, they are payable to the clerk of the superior court. You go down, typically to the probate department or the settlement conference judge or the IC judge, whoever is assigned to it, and you petition for a minor's compromise. The court either approves it or declines it or modifies it in some way. The money then goes into a blocked bank account or a structured settlement or, in some cases, a special needs trust. And that's where they... It does not go into an attorney's trust account. Right. I know we're way outside the record here, but it seems to me, and this is just from recollection from another case, but under California law, there are special rules that govern special needs accounts as well. Is that right? That's correct. That may or may not permit the imposition of a lien by a third party without a specific court act. I believe you are correct. I have no expertise in that whatsoever, but I believe the reason that one uses a special needs trust is so that there is no reimbursement of the various indigent health care plans, et cetera. You have to notice them, Social Security, whatever it might be. Right. But I think that is typically correct. Yeah. And obviously, this is background for us because it's not part of the complaint or the record in the case, but we appreciate your answer. Sure. And if I could reserve a few minutes. Sure. You bet. Thank you, Your Honor. Rebuttal. I'd like to respond to a few points here that he made. The first point is that he's quoting a Harris trust as being something that refers to constructive trust only in the context of wrongdoing. That's just simply wrong. If you take a look at our reply brief, we address that point in a case called Wellmark v. DeGuarra, which is a Southern District of Iowa case post-Newtson decided in 2003. And just to sum this up, since I don't have a lot of time, it says, contrary to DeGuarra's characterization of the principles set forth in Harris trust, that court did not limit recovery under Section 50283 to unlawfully transferred property. And what he's done is he's taken that way out of context, and that's been flatly rejected by another court. Well, a district court in another circuit. That's correct. Under different circuit law. So that has nothing to do at least for, I mean, I understand your point, but it doesn't. I'm just saying that another court has already taken a look at that. I know it's not binding or anything, but I think the other thing, too, is if you take a look at Harris trust, you could see that it's one of many grounds for the imposition of a constructive trust. And if you take a look at our brief with citations to Pomeroy and other treatises, you'll find out that constructive trust can be applied on numerous grounds. It seems to me that at the end of the day, and it may be that you end up being right on this, but at the end of the day, you're really urging for a change in the way we look at equitable actions under ERISA. Essentially, you're urging us to say if there is a grain of an equitable remedy, even though it's based on essentially a breach of contract theory, a legal theory, not an equitable theory, you get to pursue the proceeds, right? Well, I think there is something. And that's a sea change from our case law. No, it's not, actually, after you take a look at Foster. And if you take a look at Foster. I was arguing that it might not have occurred in Harris, so I'll have to look at that carefully. Sure. But basically, isn't that at the end of the day what you're urging? You sometimes, well, to answer your question, I think the answer is yes, sometimes you can get money with an equitable theory, if that's what you're asking. And the answer is yes, you can, but only under very limited circumstances. And I think Honolulu Joint Apprenticeship Training Committee, if you foster, recognizes that. They say despite eliminating reimbursement as an available remedy, however, both Ellis and Owens, and those are the two cases that comprise this Owens trilogy that he's relying on, left intact the availability of restitution as appropriate equitable relief. That availability was cut in half last term when the Supreme Court distinguished between legal and equitable restitution for purposes of Section 502A3. The Court explained that equitable restitution is available only in limited circumstances when there is an identifiable race. And that's what we're trying to go after here. And that's the crux of this whole thing here. May I add to that? But at least in your complaint, the only identifiable race you have is the $30,000 trust account. And we're also saying that you want to amend it. I know you keep saying you want to amend, but that's not in front of us. That's right. And we, and I may be wrong on this, but I think that would be, there certainly would be a lot of other issues involved with the Special Needs Trust. That's fine. I think we didn't know about the Special Needs Trust until later on. And so we would like to go after them, just as Scalia had left. Why wouldn't you have known about it? I mean, you know what the California law was. Because there was no minors' compromise that had been struck at a certain point. Well, what happened was... Well, was the money going to a minor? It was going to a minors' comp trust. We know that. That's the law. We're trying to monitor. They would never tell us when that would happen. That's one thing. They just really shielded us from information. Well, you could certainly have anticipated it. That's correct. What we did was we had a runner. You had a minor and you had a suit. Right. We had a runner going down to the court trying to monitor it, and they just blew the finding of the minors' comp trust. We wanted to know when it was going to occur. They just blew it. You couldn't have anticipated it and asserted it? We did not. Well, we did not know where it was going to go. And we could have asserted it, but that would have been something beyond, you know, for Rule 11 purposes. We didn't know what that was. I would just like to also pick up on a couple of more points. The first point is that the California Law of Constructive Trust also recognizes wrongful detention. So if he wants to use that, I'm all for that. The civil code specifically says that you can have a wrongful act if you are wrongfully holding it. But isn't your theory on wrongful detention and fraud and all that just based on violation of contract? No, it's not. I'm missing something. Okay. And I think this has to do somewhat, and I think the confusion here is something that arises from the way Scalia formulated his rule. You really ought to say Justice Scalia, you know. Pardon me? Use the formal term if you don't mind. I'm sorry. Justice Scalia, Justice Ginsburg. I let it go a few times. I'm sorry. But the thing is, it sometimes looks like one, but it's different if you do so, or you pursue it on a basis that fulfills the elements of the FOSTER. And I think that's the thing. You know, if you take a look at the other cases that have allowed this type of thing to go forward, you will see that they will allow money relief under 50283 if you, for instance, go after a client trust account or some type of segregated account. And that FOSTER case has upheld that approach, and that's why all these other circuit cases are adoptable into this stream of thinking. And FOSTER, I'd just like to raise a point that he addressed, and the fact is they didn't consider or they didn't say that relief was inappropriate in that particular case because that he didn't ever get the money. The point was, where is the money? It's gone. It's dissipated. You can't trace it anywhere. It's already gone and blown through the four winds. That is a particular case, which other cases involve things like overpayment and stuff like that. You can't really trace that money anymore. Once it's gone, that's a breach of contract or whatever tort state law claim that you want to characterize that as being. But if you're going after a particular set of funds, and what we're saying is that the settlement funds are a particular set of They are at least at the time the complaint was written, and that's the fact that I guess we have to take a look at as being true right now. It was in his trust account, and that is something that's specifically identifiable that is traceable back to the plan term allowing us to seek relief against them. And once again, I can't stress enough the fact that the matter is that when it looks like you're looking or you're going after a breach of contract action, when you're trying to follow the rules of Knutson and of Varko, of Carpenter and the Fourth Circuit, and wherever you're taking a look at where courts have awarded relief under these theories, you'll see a very, very fine distinction that's being drawn. Can you get a specific race? If you can, you win. If you can't, then it's just another legal remedy you're trying to sue, and they're basically your creditor. That's the key thing here. And we just like a rule saying that to bring it in line, because there are cases that have relied on this type or that have awarded relief in these types of situations. You're about three and a half minutes over time, so why don't you wrap up. I'm sorry. And so that's all we're looking for. And I think that's basically all we're going to say.  Thank you, counsel. Thank you very much, Your Honor. You want to reserve two minutes for the attorney's fees issue, but... Your Honor, I did not hear any mention of an attorney's fee issue, so unless there are any other questions, I'll just say good day. Yeah, thank you, counsel. The case just heard will be submitted, and we'll take a recess of about 15 minutes. Thank you. This court shall stand in recess.
judges: Canby, Noonan, Thomas